UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN GLOVER, ET AL., | No. C-03- 1838 MJJ (JCS) |
| Plaintiffs, | **REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT BY DEFAULT AGAINST DEFENDANTS JAMES KALFSBEEK, KURT LAKOTA, ERVIN REESE, PUGET SOUND AGRICULTURAL SOCIETY LIMITED aka JESUS CHRIST ADMINISTRATORS [Docket No. 100]** |
| v. | |
| PUGET SOUND AGRICULTURAL SOCIETY LTD., ET AL., | |
| Defendants. | |

## I.  INTRODUCTION

In 1996, Jill Glover and Fred Coty, II were involved in a car accident involving driver John Wood, who had purchased liability insurance from Defendant Puget Sound Agricultural Society, Ltd.  Glover was seriously injured and Coty was killed in the accident.  Subsequently, the conservator of Glover's estate and the personal representative of Coty's estate brought personal injury tort actions and obtained judgments in the amount of 10 million dollars each.  They have been trying to collect on those judgments ever since.

The current action involves funds that were held in a Canadian bank account in the name of Puget Sound Agricultural Society Ltd. until April 2002, then allegedly transferred to individual Defendants James Kalfsbeek, Kurt Lakota and Ervin Reese to avoid satisfaction of the judgment.  Plaintiffs now bring a Motion for Entry of Judgment by Default Against Defendants James Kalfsbeek, Kurt Lakota, Ervin Reese and Puget Sound Agricultural Society Ltd. aka Jesus Christ Administrators ("the Motion").   For the reasons stated below, it is recommended that the Court GRANT Plaintiffs' Motion.

## II.  BACKGROUND

Following a 1996 car accident, Plaintiffs obtained two separate default judgments, each in the amount of $10 million, against driver John Wood.  Complaint, Ex. 11 (Default Judgment, Case No. 99-

United States District Court
For the Northern District of California

1  10318, United States District Court for the Eastern District of Michigan).  Wood had purchased an
2  automobile insurance policy from Puget Sound Agricultural Society Ltd. ("PSASL") prior to the accident
3  that purported to provide full coverage, but PSASL failed to defend him in the tort actions.  Id.   Wood
4  then assigned his rights to Plaintiffs, who brought an action against PSASL for breach of its insurance
5  contract, fraud and statutory violations, seeking damages in the amount of the two default judgments.  Id.
6  PSASL failed to appear, and default judgment was entered against it in the amount of $20 million ("the
7  Michigan Judgment").  Id.

8  In July 2001, Plaintiffs registered the Michigan Judgment with this Court in Case Number C01-FJ-
9  5020 ("the Debt Collect Action").  Docket, Case No. C 01-FJ-5020.  On September 17, 2001, an
10 abstract of judgment was issued by this Court and on December 1, 2001, a Writ of Execution was issued
11 against PSASL in the amount of $22,161,579.00.  Id.  On January 2, 2002, James F. Kalfsbeek, as
12 PSASL's registered agent, was ordered to appear for a Judgment Debtor exam set for March 14, 2002.
13 Complaint, Ex. 1 (Application and Order for Appearance and Examination).  The day before the debtor's
14 exam, Kalfsbeek issued Plaintiffs a "Bill of Exchange," payable by the United States Treasury, in the
15 amount of $25,645,098.30.  Complaint, Ex. 7.  According to Plaintiffs, the Bill of Exchange was rejected
16 for deposit by the Plaintiffs' counsel's bank and is "bogus.".  Motion at 3; Complaint at 9; Refusal of Bank
17 to Honor the Tender of Debtor's Bill of Exchange (declaration of plaintiffs' counsel, filed April 12, 2002 in
18 Debt Collection Action).

19 According to Plaintiffs, Kalfsbeek testified at the March 14, 2002 debtor's examination that
20 "$160,00.00 belonging to the PSASL judgment debtors was on deposit in an unknown Canadian bank
21 account that had been frozen by the Province of British Columbia, Minister of Financial Institutions."
22 Complaint at 7.

23 On April 29, 2002, the Canadian bank released the funds in PSASL's account.  Complaint, Ex. 2.
24 Apparently unaware of the release, however, on May 1, 2002, Judge Zimmerman issued a Turnover Order
25 in the Debt Collection Action ("the May 1 Turnover Order"), pursuant to Cal. Civ. Proc. Code § 708.205,
26 requiring that PSASL transfer to Plaintiffs the "the judgment debtor's frozen money in Canada."
27 Complaint, Ex. 3.  The May 1 Turnover Order did not contain the name of the Canadian bank.  On May
28 10, 2002, Kalfsbeek signed the instructions for the bank attached to the May 1 Turnover Order without

informing Plaintiffs or the Court that the funds were no longer frozen. Complaint at 8. On May 15, 2002, Kalfsbeek appeared for a further debtors' examination and again failed to inform the Plaintiffs or the Court that the funds had been released. Complaint at 8.

On May 22, 2002, Plaintiffs' counsel received notice from the Canadian bank that the frozen funds had a been released on April 29, 2002 and that it had "no active accounts in the name of Puget Sound Agricultural Society, Ltd." Complaint at 8 & Ex. 2. The notice indicated that the freeze was imposed on February 28, 2002. Id. The May 22, 2002 letter appears to be the first notice Plaintiffs received of the name of the bank in which the PSASL account was held.

On May 31, 2002, Judge Zimmerman issued a second Turnover Order, ordering Defendants to turn over to Plaintiffs the funds that had been released by the bank. Complaint, Ex. 5.

On June 7, 2002, Kalfsbeek filed a declaration in the Debt Collection Action stating that PSASL was "out of business, bankrupts and is in the process of seeking bankruptcy relief and dissolving the Corporation."[1] Complaint, Ex, 9. According to Kalfsbeek, the funds in the Canadian account were "pre-obligated because checks had already been issued for payment of the assessed post accident claims, prior to funds being frozen [and] prior of [sic] any orders issued by this court." Kalfsbeek asserted that PSASL and its officers and directors were under "no obligation to refrain from concluding its business with regard of disbursing the pre-obligated funds, nor were they under any obligation to withdraw their instructions to the bank ordering the immediate expediting of said funds upon their release in anticipation that such a court order might ensue." Id. "Consequently," Kalfsbeek stated, "there are no funds remaining to be turned over as ordered." Id.

In response, Plaintiffs requested an order to show cause why Defendants should not be held in contempt and sanctioned for failing to comply with the Court's Turnover Orders in the Debt Collection Action. On July 30, 2002, Judge Zimmerman denied the request on the basis that the Turnover Orders had been issued *after* the funds had already been released from the Canadian bank account and therefore, the transfer of funds out of the account was insufficient to establish contempt of court. Complaint, Ex. 6 (July

---

[1] At oral argument, Plaintiffs represented to the Court that there is no pending bankruptcy action by PSASL.

3

1 30, 2002 Order) at 3.  The Court noted that to the extent the transferred funds at issue were subject to a
2 statutory lien, there were other remedies available to Plaintiffs.  Id.

3 In the year that followed, additional debtors' examinations were conducted in the Debt Collection
4 Action.  On February 26, 2003, Kalfsbeek appeared for a further debtor's examination.  According to
5 Plaintiffs, Kalfsbeek admitted in this examination that the Canadian bank account contained either
6 $190,000.00 or $195,000.00.  Complaint at 8.  However, he "refused and failed to produce subpoenaed
7 documents to prove how the defendants disbursed the $195,000."  Complaint at 12; *see also* Minutes,
8 February 26, 2003 Debtor's Examination (filed February 27, 2003 in Debt Collection Action).  In April
9 2003, Kalfsbeek filed a complaint in the Debt Collection Action alleging violations by Plaintiffs of the Fair
10 Debt Collection Practices Act.  An Opposition was filed on June 6, 2003.  However, the docket sheet
11 reflects no further activity in that case and no ruling on that motion.

12 In the meantime, on April 23, 2003, Plaintiffs filed this action, asserting two claims: 1) "Complaint
13 by Judgment Creditor Against Third Persons in Possession or Control of Property in Which Judgment
14 Debtor Has Interest or is Indebted to Judgment Debtor" ("Claim One"); and 2) violation of the Uniform
15 Fraudulent Transfer Act (Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07, 3440) ("Claim Two).  Plaintiffs
16 named as Defendants PSASL and four California residents who they allege are (or were) officers and
17 shareholders of PSASL: James Kalfsbeek (director and CEO); Amy Polnoff (president and officer); Ervin
18 Reese (director); and Kurt Lakota (secretary and treasurer).  Complaint at 2,6.

19 On May 28, 2003, Kalfsbeek sent Plaintiffs' counsel a letter entitled "NOTICE OF
20 ACCEPTANCE/ NON-NEGOTIABLE."  Motion, Ex. 1.  In the letter, Kalfsbeek states that he has
21 "accepted for value" Plaintiffs' "offer" and that therefore he has "directed the discharge of my acceptance
22 forthwith."  *Id*.  Attached to the letter is a document entitled "Bonded Bill of Exchange Order," purporting
23 to be payment in the amount of $195,000.00 to Plaintiffs.  The format of this document is very similar to the
24 earlier "Bill of Exchange" that was rejected by Plaintiffs' bank as worthless.

25 Plaintiffs voluntarily dismissed Defendant Amy Polnoff, without prejudice, on March 7,2005.  The
26 Clerk entered default as to Defendant Ervin Reese on June 17, 2003 [docket no. 10].  The Clerk entered
27 the default of PSASL and James Kalfsbeek on July 1, 2003 [docket no. 37].  The Clerk entered the
28 default of Kurt Lakota on September 30, 2004 [docket no. 87].

In the Motion, Plaintiffs seeks entry of default judgment as to PSASL, Kalfsbeek, Lakota and Reese and the following relief: 1) damages in the amount of $195,000.00; 2) prejudgment interest in the amount of $57,650.97; 3) attorneys' fees and costs; and 4) a turnover order for any property that came into defendants actual or constructive possession "anytime subsequent to the plaintiff[s'] perfection of [their] statutory lien of January 2, 2002, through January 3, 2003." In support of the Motion, Plaintiffs argued they were entitled to this relief based on Claim One. Specifically, they relied on Cal. Civ. Code § 708.110(d), asserting that service of notice of the debtor's exam on January 3, 2005 created a lien on PSASL's personal property – including the funds released from the Canadian bank account – for one year. At oral argument, however, Plaintiffs stipulated to withdrawal of Claim One. Plaintiffs also withdrew their request for prejudgment interest, attorneys' fees and costs. The issue before the Court is whether Plaintiffs are entitled to default judgment and the remaining requested relief based on Claim Two, the fraudulent conveyance claim.

## III.    ANALYSIS

### A.    Standard For Awarding Default Judgment

Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment where the clerk, under Rule 55(a), has already entered the party's default based upon failure to plead or otherwise defend the action. The district court's decision to enter a default judgment involves some discretion. *Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956) (affirming district court's denial of default judgment). The court is free to consider a wide range of factors in deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claim, facts alleged in the complaint generally are deemed to be true by virtue of the defendant's default. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Construction Co.,*

5

*LTD. v. Houston National Bank*, 515 F. 2d. 1200, 1206 (5th Cir. 1975) (holding that allegations concerning existence and terms of a contract did not support liability where allegations were contradicted by actual contract). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id*.

### B.   *Eitel* Factors

#### 1.   **Excusable Neglect**

There is no evidence in the record that Defendants defaulted as a result of excusable neglect. Rather, the record indicates that Defendants have chosen not to appear in this action. This factor, therefore, supports entry of default judgment.

#### 2.   **Sufficiency of Plaintiffs' Complaint and Substantive Merits**

In order to determine whether default judgment should be entered, the Court must assess the legal sufficiency of the complaint as well as the substantive merits of the case. The Court concludes that both the allegations and the evidence with respect to Plaintiffs' fraudulent conveyance claim – the only remaining claim in the case – support entry of default judgment.

Plaintiffs allege that the individual defendants obtained control and possession of the $195,000.00 in the Canadian bank account and then transferred the $195,000.00 to themselves and others, thereby rendering PSASL insolvent, even though they knew PSASL was likely to incur debt beyond its ability to pay, given the outstanding judgment against it. Complaint at 13-16. Plaintiffs' allegations, which are deemed to be true for the purposes of establishing liability because of Defendants' default, satisfy the requirements for a fraudulent conveyance claim set forth in Cal. Civ. Code § 3439.04.[2] Further, California

---

[2]That provision states, in relevant part, as follows:

§ 3439.04. Transfers fraudulent as to present and future creditors; factors to determining intent

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the

courts have held that a "personal judgment against the transferee may be had when he knowingly participates in the fraudulent conveyance with the intention of defrauding creditors." *Flowers and Sons Dev't Corp. v. Municipal Court of the City and County of San Francisco*, 86 Cal. App. 3d 818, 825 (1978).

The evidence in the record also supports the conclusion that Plaintiffs' fraudulent conveyance claim has merit and that the amount alleged in the complaint is correct. In particular, Defendants have repeatedly sought to evade payment of the original judgment. Further, in making the Bonded Bill of Exchange Order

---

debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

(b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:

(1) Whether the transfer or obligation was to an insider.

(2) Whether the debtor retained possession or control of the property transferred after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

7

1  out for $195,000.00, Defendants essentially conceded the amount of the fraudulent conveyance was
2  $195,000.00.[3]
3  Therefore, Plaintiffs are entitled to damages in the amount of $195,000.00 on their fraudulent
4  conveyance claim.[4]

**IV. CONCLUSION**

It is recommended that the Motion be GRANTED. Default judgment should be entered in the amount of $195,000.00. Post-judgment interest shall accrue pursuant to 28 U.S.C. § 1961.

DATED:       June 20, 2005

/s/ Joseph C. Spero
JOSEPH C. SPERO
United States Magistrate Judge

---

[3] Plaintiffs' counsel also represented to the Court at oral argument that Kalfsbeek testified at a judgment debtor exam that the Canadian bank account contained $195,000.00 before it was unfrozen.

[4] Plaintiffs did not brief the grounds for their request for an additional turn-over order, even though such relief was requested in the Motion. Nor did Plaintiffs raise this issue at oral argument. To the extent Plaintiffs still seek such relief, the Court finds no legal authority for issuance of a turn-over order based on the only remaining claim, the fraudulent conveyance claim.